**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**LAKE CHARLES DIVISION**

| | | |
|---|---|---|
| **KENNETH HEBERT, ET AL.** | : | **DOCKET NO. 05-0451** |
| **VS.** | : | **JUDGE MINALDI** |
| **ENERGEN RESOURCES CORPORATION, ET AL.** | : | **MAGISTRATE JUDGE WILSON** |

**REPORT AND RECOMMENDATION**

Before the court is plaintiffs' motion to remand [doc. # 13].[1]

Background

Kenneth Hebert and Patrick Hebert are landowners in Calcasieu Parish. (Petition, ¶¶ III. 1-2). During all relevant times, Energen Resources Corporation or its predecessors operated wells, pipelines, storage facilities, etc., and conducted oil and gas exploration and production activities on the Heberts' land. *Id*. at ¶ III.4. The Heberts recently discovered that their land is contaminated with oilfield waste, and littered with abandoned pipes, tanks, and other equipment. *Id*. at ¶ III.5. They contend that Energen is responsible for the oil and gas waste on their property. *Id*.

Accordingly, on January 4, 2005, the Heberts filed the instant suit against Energen and the State of Louisiana, through the Department of Environmental Quality ("DEQ"), and through the Department of Natural Resources ("DNR"), in the 14th Judicial District Court for the Parish

---

[1] The motion has been referred to the undersigned for decision pursuant to 28 U.S.C. § 636(b)(1)(A).

of Calcasieu, State of Louisiana. (Petition, ¶ II). Plaintiffs seek *inter alia*, recovery for the damages to their property and punitive damages. (Petition, ¶¶ III. 14-22).

On March 11, 2005, Energen removed the case to federal court on the basis of diversity jurisdiction, 28 U.S.C. § 1332. Plaintiffs are Louisiana domiciliaries. (Amend. Notice of Removal, ¶ 3). Energen is an Alabama corporation, with its principal place of business in Alabama. *Id.* However, the State of Louisiana is not a citizen for purposes of diversity, and its continued presence would thwart diversity jurisdiction. *Texas Dept. of Housing and Community Affairs v. Verex Assur., Inc.,* 68 F.3d 922, 926 (5th Cir. 1995). To circumvent this jurisdictional obstacle, Energen contends that plaintiffs do not have a viable cause of action against the state, and that its presence should be disregarded for purposes of determining diversity (*i.e.* improper or "fraudulent" joinder). (Amend. Notice of Removal, ¶ 4).

Plaintiffs disagree with Energen's assessment of their claims against the state, and on April 11, 2005, filed the instant motion to remand due to lack of subject matter jurisdiction. 28 U.S.C. § 1332. On April 15, 2005, the undersigned issued a minute entry notifying the parties that if the court found that plaintiffs had no reasonable possibility of recovery against the state then summary judgment would be recommended *sua sponte* in favor of said defendant. Parties were invited to file any additional briefs and/or competent summary judgment evidence addressing the relevant issue(s). Following additional delays for briefing, the matter is now before the court.

## Improper Joinder

Once a case has been removed, the burden lies with the removing party to prove that the

court has jurisdiction to decide the claim. *Jernigan v. Ashland Oil Inc.* 989 F.2d 812, 815 (5th Cir. 1993)(citing, *Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40, 42 (5th Cir. 1992)). If jurisdiction is alleged on the basis that non-diverse parties have been improperly joined, then the removing party must establish either: "actual fraud in the pleading of jurisdictional facts," or "an inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568 (5th Cir. 2004)(*en banc*)(citing, *Travis v. Irby*, 326 F.3d 644 (5th Cir. 2003)). Our focus is the second basis for improper joinder. *See, Travis, supra.* In resolving this issue, we must determine whether the removing defendant has demonstrated that plaintiff has "no possibility of recovery" against the diversity-destroying defendant; *i.e.* that there is "no reasonable basis" for the district court to predict that the plaintiff might recover against said defendant. *Smallwood, supra.*

The court may resolve this issue in one of two ways: 1) the court can look at the allegations of the complaint to determine whether the complaint states a claim against the challenged defendant under state law (*i.e.* a Fed.R.Civ.P. 12(b)(6) analysis); or 2) in the few cases where the plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder, the court may, in its discretion, pierce the pleadings and conduct a summary inquiry. *Smallwood, supra.* However, the "summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the [diversity-destroying] defendant." *Id.*[2] In the process, the court must consider "all unchallenged factual allegations" in the light most favorable to the plaintiff. *Travis,*

---

[2] In other words, facts that can be easily disproved if not true. *Id.*

*supra.* Any contested issues of fact and ambiguities of state law must be resolved in favor of remand. *Id.*

Finally, when the only proffered justification for improper joinder is that there is no reasonable basis for predicting recovery against the diversity-precluding defendant, and that showing necessarily compels the same result as to all remaining defendants, then the requisite showing has not been made, and there is no improper joinder. *Smallwood, supra.* If the foreign/diverse defendant fails to establish improper joinder, then diversity is not complete, and remand is required. *Id.*

## Discussion

In the case *sub judice*, the Heberts allege that the State of Louisiana (through the DEQ and the DNR) was negligent by: 1) failing to ensure compliance with applicable rules and regulations regarding the disposal of contaminated soil and exploration and production wastes; and 2) failing to ensure and to monitor proper waste disposal procedures for solid and hazardous wastes generated on plaintiffs' property. (Petition, ¶ III.13).

Energen argues that the instant claims arise out of the state agencies' policymaking or discretionary functions, and thus the state is statutorily immune from suit. La. R.S. 9:2798.1.[3] The purpose of § 9:2798.1 "is to provide immunity from liability for offenses and quasi offenses

---

[3] The statute provides in pertinent part,
> [l]iability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties.

La. R.S. 9:2798.1(B).

of public entities, as defined therein, when the acts or omissions of the public entities are policymaking or discretionary acts or omissions." *Gregor v. Argenot Great Central Insurance Co.*, 851 So.2d 959, 964 (La. 2003).

> Louisiana courts have adopted a test analogous to the FTCA discretionary function test in determining whether an official [or agency] is protected by the statute, namely, (1) whether a state law, regulation, or policy specifically prescribes the officer's course of action; and (2) whether the challenged action is grounded in political, economic, or social policy. Under part one, if the official has no alternatives, the exception does not apply. Under part two, the court must determine whether, if the action involves selection among alternatives, the choice was policy-based. An officer's use of policy-based discretion protects him from state tort liability.

*Roberts v. City of Shreveport*, 397 F.3d 287, 296 (5th Cir. 2005)(citations omitted). Moreover, "[w]hen discretion is involved, the court must then determine whether that discretion is the kind which is shielded by the exception, that is one grounded in social, economic or political policy." *Hardy v. Bowie*, 744 So.2d 606, 613 (La. 1999).

Citing Louisiana Revised Statute § 30:2012, plaintiffs contend that the discretionary function exception is inapplicable because the DEQ was required to inspect Energen's oil production facility. Section 30:2012 provides that "timely and meaningful" inspections of all facilities subject to the subtitle are required. La. R.S. § 30:2012(A). The purposes of the inspections are to determine *inter alia*, if the site is a danger to the health or environment or if it constitutes an abandoned waste site. *Id.*

Energen contends that the "facilities" in § 2012, do not contemplate the type of facilities on plaintiffs' property. However, in *In Re: Mullins & Pritchard, Inc.*, the DEQ inspected four hydrocarbon production facilities and discovered leaking oilfield waste. *In Re: Mullins & Pritchard, Inc.*, 549 So.2d 872 (La. App. 1st Cir. 1989). The court found that § 2012 authorized

5

the inspections of the facilities at issue. *Id*. In other words, at least one Louisiana court has found that § 2012 applies to oilfield production facilities such as the one at issue here.[4] Thus, the DEQ's alleged failure to comply with § 2012's inspection requirements, precludes application of the discretionary function exception in the case *sub judice*.[5]

Energen further contends that the DNR (in lieu of the DEQ) has jurisdiction over the management of waste associated with oil and gas exploration and production activities. (*See*, J. Brent Campbell Affidavit and Michael P. Algero, Sr.'s April 27, 2005, Affidavit). Defendant argues that there are no statutes, regulations, or policies that require the DNR to follow any specific course of action when regulating oilfield sites. Instead, Energen concludes that it is left to the DNR's discretion. Specifically, the DNR has a long-standing practice of best using its resources to respond to citizen complaints regarding operational problems and operator reports of non-compliance, in addition to performing its routine discretionary enforcement and inspection activities. (Campbell Affidavit).

Presumably, the reason that the DNR does not inspect all oilfield production sites is due to its limited financial resources. (*See*, Campbell Affidavit). Nevertheless, the DNR apparently does perform routine discretionary inspections of some sites. *Id*. Yet, defendant has not established the social, economic, or political considerations that guide the DNR's discretion

---

[4] J. Brent Campbell of the DNR opined that the oilfield waste referenced in plaintiff's petition arose from oil and gas exploration and production activity. (J. Brent Campbell Affidavit; Def. Exh.).

[5] Energen adduced an affidavit that implies that the type of facilities at issue here are not subject to regulation by the DEQ. (*See*, Michael P. Algero's May 19, 2005, Affidavit). However, the affidavit is contradicted by the DEQ's actions, and the court's finding in *In Re: Mullins & Pritchard, Inc.*, *supra*. Of course, all contested issues of fact and ambiguities of state law must be resolved in favor of remand. *Travis, supra*.

6

when deciding which sites to inspect.[6] Accordingly, the discretionary function exception is inapplicable to plaintiffs' claims against the DNR. *See, Hardy, supra* (where city did not articulate any social, economic, or political policy considerations for its actions, § 9:2798.1 immunity did not apply); *Misuraca v. City of Kenner*, 802 So.2d 784, 789 (La. App. 5th Cir. 2001)(discretionary function exception did not apply because city did not set forth any social, economic or political considerations for its actions).

We caution that this is not a motion for summary judgment where after defendant makes an initial showing, the burden of proof shifts to plaintiff to establish competent summary judgment evidence in support of each element of her claims against a particular defendant. Rather, in the context of a motion to remand, the removing defendant has the onerous burden of proving no reasonable possibility of recovery by plaintiff against the diversity-precluding defendant.

We do not purport to express an opinion on the merits of the claims asserted against the state. Nor do we even suggest that a Louisiana court will find that as a matter of law, and fact, that the state is liable. We only repeat the oft-cited principle that where the removing party grounds its allegations of fraudulent joinder upon a theory that plaintiff cannot recover from a given defendant as a matter of law, this court is obliged to resolve all disputed questions of fact in favor of plaintiff; and then determine whether there could possibly be a valid cause of action set forth under state law. *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545 (5th Cir. 1981).

Here, Energen has not precluded the reasonable possibility that the state, via the DEQ and/or the DNR, could be subject to liability under state law. The state's continued presence

---

[6] Plaintiffs raised this issue in their supplemental brief. (Pl. Supp. Memo., pgs. 6-7).

destroys diversity jurisdiction, and thus subject matter jurisdiction is lacking. 28 U.S.C. § 1332. Remand is required. 28 U.S.C. § 1447.

Plaintiffs further seek the award of costs and fees pursuant to 28 U.S.C. § 1447. An order remanding a case to state court may require payment of "just costs and any actual expenses, including attorney fees," that were incurred as a result of removal. 28 U.S.C. § 1447(c). Fees are awardable under Section 1447(c) only if the removing defendant lacked "objectively reasonable grounds to believe the removal was legally proper." *Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 541 (5th Cir. 2004)(citing, *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 293(5th Cir. 2000)). Here, however, the removing defendant had "objectively reasonable" grounds to remove the case. *See*, discussion, *supra*.

Recently, the Fifth Circuit has recognized that a component of "costs" under § 1447(c) are the costs assessable under Fed.R.Civ.P. 54(d)(1)). *Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 541 (5th Cir. 2004). Rule 54(d)(1) costs are not subject to the objective reasonableness test. *Id*. Rather, they "shall be allowed as of course to the prevailing party . . ." Fed.R.Civ.P. 54(d)(1). Rule 54(d) creates a strong presumption that the prevailing party will be awarded costs. *Schwarz v. Folloder*, 767 F.2d 125, 131 (5th Cir.1985). Removing defendant has not overcome this presumption.

For the foregoing reasons,

IT IS RECOMMENDED that plaintiffs' motion to remand [doc. #13] be GRANTED.[7]

IT IS FURTHER RECOMMENDED that Fed.R.Civ.P. 54(d)(1) costs be assessed against

---

[7] Having found a reasonable possibility of recovery against the non-diverse defendant, we do not (and cannot) reach the issue of summary judgment. (*See*, April 15, 2005, Minute Entry).

8

the removing defendant. 28 U.S.C. § 1447(c).[8]

IT IS FURTHER RECOMMENDED that movants' requests for costs and fees be otherwise DENIED.

Under the provisions of 28 U.S.C. §636(b)(1)(C), the parties have ten (10) business days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 27th day of June, 2005.

_____
ALONZO P. WILSON
UNITED STATES MAGISTRATE JUDGE

---

[8] The costs are limited to those incurred in federal court that would not have been incurred had the case remained in state court. *Avitts, supra.* The costs are as specified in 28 U.S.C. § 1920. The amount of costs shall be determined by the Clerk of Court in the first instance. *See*, LR 54.3. An interactive version of AO Form 133 "Bill of Costs" can be found on the court's website: http://www.lawd.uscourts.gov/.